UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

UNITED STATES OF AMERICA,

Plaintiff,

v.

AGUSTIN FLORES APODACA and
PANFILO FLORES APODACA,

Defendants.

Criminal Action No. 14-57 (BAH)

Chief Judge Beryl A. Howell

---

## MEMORANDUM OPINION AND ORDER

The government seeks enforcement of two administrative subpoenas issued by the Federal Bureau of Investigation ("FBI") demanding production of the jail calls of the defendants Agustin Flores Apodaca and Panfilo Flores Apodaca recorded by the D.C. Department of Corrections ("DOC"). *See* Gov't's Mot. Release Defs.' Jail Calls ("Gov't's Mot.") at 1–2, ECF No. 23. After receiving the administrative subpoenas, DOC's General Counsel delivered the recordings on two CDs to the Court, along with a letter describing the circumstances in which the administrative subpoenas were received and attaching supporting documentation, which documents were filed on the docket. *See* Court's Notice to Parties, ECF No. 20. For the reasons set forth below, the government's motion is granted.

### I.  BACKGROUND

On May 2, 2012, a grand jury in this District returned a two-count indictment against Agustin Flores Apodaca and two other individuals for violations of the United States Code's prohibitions against conspiring to traffic controlled substances and possessing a firearm in furtherance of the same. *See* Indictment, *United States v. Agustin Flores Apodaca*, Criminal Action No. 12-116 (D.D.C. May 2, 2012), ECF No. 1. Almost two years later, on March 13,

2014, a grand jury in this District returned a substantially similar indictment against Panfilo Flores Apodaca. *See* Indictment, *United States v. Panfilo Flores Apodaca*, Criminal Action No. 14-57 (D.D.C. Mar. 13, 2014), ECF No. 1. Both Agustin and Panfilo Flores Apodaca were extradited to the United States from Mexico and are now joint defendants in this consolidated criminal case. *See* Gov't's Mot. at 2; Min. Entry, dated Jan. 6, 2017.[1]

On December 15, 2016, the government served on DOC two subpoenas *duces tecum*, pursuant to Federal Rule of Criminal Procedure 17, requesting production of "the recorded calls for inmate AGUSTIN FLORES APODACA . . . from January 5, 2016 through the present." Notice to Parties at 3–6. The subpoenas "commanded" that DOC bring the recordings to the Court on December 28, 2016, but advised that DOC "may comply with this subpoena by providing the requested information on a compact disk [sic] to [government counsel]." *Id.* In response to the subpoenas, DOC prepared the calls, which were picked up by a courier for the government on January 3, 2017. *See id.* at 1.

On January 17, 2017, counsel for Agustin informed DOC in an email that he "ha[d] learned that the prosecutors . . . recently served a subpoena on [DOC] requesting copies of [Agustin's] recorded jail phone calls and making the documents returnable to the prosecutors directly." *Id.* at 7. Citing the holding in *United States v. Binh Tang Vo*, 78 F. Supp. 3d 171 (D.D.C. 2015), that "Rule 17 does not permit the government to 'invite' pretrial production absent court approval," *id.* at 178 (internal capitalization omitted), counsel asserted that the procedure by which the government in this case obtained Agustin's jail calls was unlawful. *See* Notice to Parties at 7. Counsel further explained that he "advised the prosecutors that the

---

[1] For ease of reference, given that the defendants share a last name, they are referred to by their first names. The two individuals indicted along with Agustin were, apparently, never extradited to the United States.

manner in which they obtained the phone calls was unlawful and they replied that they were now going to obtain the calls 'by other means,'" which he "infer[red]" meant "a request by the U.S. Marshals to the jail to obtain copies of the phone calls," *i.e.*, a request that DOC voluntarily produce the calls to the government. *Id.* at 7. Expressing the view that DOC "ought [not] be complicit in the federal prosecutors['] efforts to make an 'end run' of the legal system," counsel warned that "such disclosure [by DOC] could well result in legal action" by the defendant against DOC. *Id.* In a second email the same day, Agustin's counsel cited DOC's FOIA Program Manual to support the defendant's position. *Id.* at 8. That manual provides, "Copies of . . . recorded telephone conversations, or written transcripts, shall only be disclosed to a requesting law enforcement agency when," *inter alia*, "[r]equested through proper judicial process (e.g. grand jury or court issued subpoena and court orders)." DOC FOIA Program Manual, 1300.1G, ch. 5(2)(c)(2). DOC's General Counsel informed Agustin's counsel that her "staff was instructed last week that information subpoenaed in this case is to be provided to the Court for the judge to address the parties' pretrial discovery disputes." Notice to Parties at 11.

In her letter, DOC's General Counsel advises the Court that, around the time of Agustin's counsel's initial email, she received a phone call from government counsel, who "requested that [DOC] provide him with the calls without a subpoena." *Id.* at 2. DOC's General Counsel declined to do so, "citing policy." *Id.* Counsel for the government then asked "if [DOC] would instead accept an administrative subpoena from DEA or FBI." *Id.* DOC's General Counsel again declined, "citing policy," as well as "the discovery dispute between the parties," and suggested that government counsel "address[] the matter with the Court." *Id.*

Notwithstanding DOC's General Counsel's suggestion that government counsel resolve the discovery dispute with the Court, on February 9, 2017, DOC received two administrative

3

subpoenas from the FBI, issued pursuant to 21 U.S.C. § 876, requesting DOC's recorded calls for each defendant from the period October 21, 2015, to February 7, 2017. *Id.* at 13–20. Without responding to these subpoenas, on February 17, 2017, DOC's General Counsel sent a letter to the Court describing the events outlined above and attaching counsel's correspondence and the relevant subpoenas, as well as two CDs containing the recordings targeted by the administrative subpoenas. *See generally* Notice to Parties. The documents, though not the CDs themselves, were filed on the docket on February 21, 2017. *See generally id.*

At a status hearing on March 3, 2017, counsel for the government orally raised the matter of the jail calls with the Court for the first time, requesting that the recordings be turned over to the government during the hearing. Government counsel explained he was in possession of the set of calls picked up by courier on January 3, 2017, which Agustin's counsel asserts were procured in violation of Rule 17(c)'s court order requirement, but that the government sought the two CDs in the possession of the Court because those recordings comprised a more comprehensive set of calls. Agustin's counsel indicated that, despite asking counsel for the government in advance of the status conference whether the government intended to request any relief from the Court, he had received no advance notice of the government's request, and asked that the government be directed to file a written motion. In view of dispute between the parties and to give the defendants an opportunity to detail their positions, the Court directed the government to submit a motion regarding its request for the recordings. *See* Min. Entry, dated Mar. 3, 2017. On March 15, 2017, the government submitted a Motion to Release Defendants' Jail Calls. This motion is now ripe for consideration.

## II. DISCUSSION

In its briefing, the government asserts a right to enforcement of the administrative subpoenas for production of the defendants' recorded jail calls. Principally, the government contends that it has satisfied the statutory requirements for issuance of the subpoenas. In addition, in reply, the government asserts that the defendants were not the recipients of the subpoenas, and, consequently, lack standing to challenge them. *See* Gov't's Reply Defs.' Opp'n Gov't's Mot. Release Jail Phone Calls ("Gov't's Reply") at 2–6, ECF No. 29. Ordinarily, "[i]ssues may not be raised for the first time in a reply brief." *Rollins Envtl. Servs. (NJ) Inc. v. EPA*, 937 F.2d 649, 652 n.2 (D.C. Cir. 1991); *see McBride v. Merrell Dow and Pharm., Inc.*, 800 F.2d 1208, 1211 (D.C. Cir. 1986) ("Considering an argument advanced for the first time in a reply brief . . . is not only unfair to [a non-movant], but also entails the risk of an improvident or ill-advised opinion on the legal issues tendered." (citations omitted)). Given that the question of standing implicates the Court's jurisdiction, however, that issue is addressed at the threshold.

### A. The Defendants Have Standing to Challenge the Administrative Subpoenas

The government contends that the defendants lack standing to object, either under the Fourth Amendment or the statute itself, to enforcement of the administrative subpoenas. *See* Gov't's Reply at 2–6. While the government is correct that the defendants lack Fourth Amendment standing, the defendants do possess standing to challenge whether the subpoenas were properly issued under the applicable statute.

#### 1. *Standing Conferred by the Fourth Amendment*

Where a party is not the recipient of a subpoena, standing to challenge its issuance on Fourth Amendment grounds exists only where the party has a legitimate expectation of privacy in the targeted records. *See United States v. Phibbs*, 999 F.2d 1053, 1078 (6th Cir. 1993). To

5

determine whether such an expectation exists, courts consider whether (1) "a person . . . exhibited an actual (subjective) expectation of privacy" and (2) "the expectation [is] one that society is prepared to recognize as 'reasonable.'" *Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring).

The defendants assert that the use of administrative subpoenas to target their jail calls "implicates the Fourth Amendment" because the defendants "maintain[] a reasonable expectation of privacy" in the subject calls. Def. Panfilo Flores Apodaca's Mot. Opp'n Gov't Mot. Release Jail Phone Calls ("Panfilo's Opp'n") at 5, ECF No. 25.[2] The government asserts that "defendants were put on notice and consented to having their phone calls monitored, recorded and divulged," citing DOC's written policies on inmate phone calls, and thus have no legitimate expectation of privacy in the calls. Gov't's Reply at 5–6. The vast weight of authority supports the government's position that, even assuming the defendants in this case subjectively believed that their calls were private, any such belief was unreasonable. *See, e.g., Lanza v. New York,* 370 U.S. 139, 143 (1962) (in jail setting, "official surveillance has traditionally been the order of the day"); *United States v. Shavers*, 693 F.3d 363, 389–90 (3d Cir. 2012), *vacated on other grounds*, 133 S. Ct. 2877 (2013) (holding inmates and those with whom they converse have no "objectively reasonable expectation of privacy" in telephone conversations where inmates "received a handbook alerting [them] that all telephone calls were recorded" and were "exposed to a document hanging in the common areas that notified prisoners that their calls might be monitored and recorded"); *United States v. Monghur*, 588 F.3d 975, 978–79 (9th Cir. 2009) ("[The defendant] concedes, as he must, that he had no expectation of privacy" in "jail telephone

---

[2] While these two co-defendants submitted separate pleadings opposing the Government's motion, they each moved to adopt the other's arguments, which requests were granted. *See* Min. Order, dated Mar. 29, 2017.

conversations that he knew were monitored by law enforcement."); *United States v. Novak*, 531 F.3d 99, 102 (1st Cir. 2008) (O'Connor, J., sitting by designation) ("[I]nmates and pretrial detainees who have been [given notice of monitoring of jail calls] have been deemed to have consented to monitoring."); *United States v. Friedman*, 300 F.3d 111, 123 (2d Cir. 2002) (holding notice received by pretrial detainee of recording of calls disposed of his Fourth Amendment claims related to recordings, "as he had no reasonable expectation of privacy under the circumstances"); *United States v. Van Poyck*, 77 F.3d 285, 290–91 (9th Cir. 1996) ("[N]o prisoner should reasonably expect privacy in his outbound telephone calls."); *see also United States v. Balon*, 384 F.3d 38, 44 (2d Cir. 2004) ("So long as a prisoner is provided notice that his communications will be recorded and 'he is in fact aware of the monitoring program [but] nevertheless uses the telephones, by that use he impliedly consents to be monitored for purposes of Title III.'" (alterations in original) (quoting *United States v. Workman*, 80 F.3d 688, 693 (2d Cir. 1996))). Thus, the defendants possessed no legitimate expectation of privacy in those calls sufficient to confer standing.

Accordingly, the defendants lack standing to challenge the issuance of the administrative subpoenas on Fourth Amendment grounds.

### 2. *Standing Conferred by the Statute*

The government further asserts that the defendants lack standing to challenge the subpoenas because "DOC was the target of the subpoena, not the defendants." Gov't's Reply at 4. The government's position finds direct support in the decisions of two circuit courts. In *United States v. Moffett*, 84 F.3d 1291 (10th Cir. 1996), the Tenth Circuit concluded that a criminal defendant who was not the direct recipient of a subpoena issued pursuant to § 876 was not "in the zone of interest the statute is meant to protect" and thus had no standing to challenge

the subpoena, *id.* at 1293. Citing *Moffett*, the Ninth Circuit subsequently came to the same conclusion. *See United States v. Plunk*, 153 F.3d 1011, 1020 (9th Cir. 1998) (holding the defendant does not "possess statutory standing to attack the subpoena[] because he has not demonstrated that he was within the 'zone of interests' intended to be protected by § 876(a)").

These out-of-circuit authorities must be rejected, however, in light of precedent within this Circuit. In *In re Letter of Request from Crown Prosecution Serv. of U.K. (In re Letter of Request),* 870 F.2d 686, 689 (D.C. Cir. 1989), authored by then-Judge Ruth Bader Ginsburg, the Court held that "one against whom information obtained under [a statute authorizing the issuance of administrative subpoenas] may be used[] has standing to assert that, to his detriment, the authority for which the section provides is being abused." The government has provided no basis upon which to distinguish the reasoning of *In re Letter of Request*. In addition, that reasoning finds support in decisions of at least one other circuit and the Supreme Court. *See In re Letter Rogatory from Justice Court,* 523 F.2d 562, 563–64 (6th Cir. 1975) ("Although it is well-established that records of account belong to the bank and that a depositor may not prevent their disclosure on [F]ourth or [F]ifth Amendment grounds, it does not follow that appellant lacks standing to challenge the district court's power to issue a subpoena under the terms of an authorizing statute." (citations omitted)); *see also Reisman v. Caplin*, 375 U.S. 440, 449 (1964) (holding that taxpayer who is the target but not the recipient of an administrative subpoena pursuant to 26 U.S.C. § 7602 may challenge the subpoena). Consequently, the Court concludes that the defendants possess standing to challenge the administrative subpoenas used here on the ground that the agency exceeded its authority in issuing them. *Accord United States v. Lazar*, No. 04-20017-DV, 2006 WL 3761803, at *6 (W.D. Tenn. Dec. 20, 2006) ("[T]he Court can

8

discern no compelling reason not to apply the reasoning [of, *inter alia*, *In re Letter of Request*] in [the § 876] context").

> B. **The Government Is Entitled to Enforcement of the Administrative Subpoenas**

In support of its motion for enforcement of the two administrative subpoenas at issue in this matter, the government asserts that the subpoenas were properly issued pursuant to 21 U.S.C. § 876. Gov't's Mot. at 5–6. That statute provides for agency subpoena power "[i]n any investigation relating to . . . functions under this subchapter with respect to controlled substances" as to witnesses or records the agency "finds relevant or material to the investigation." 21 U.S.C. § 876(a). The government points out that the defendants were charged with "offenses which fall under the Controlled Substances Act," and that "the matter for which the defendants are being investigated is based out of an FBI Organized Crime and Drug investigation." Gov't's Mot. at 5–6. According to the Government, "the indictment does not end the government's investigation into criminal offenses allegedly perpetrated by the defendants," and records of the type subpoenaed in this case "often provide further information in the form of admissions by target subjects of illegal drug-related activities or the planning and coordinating of future criminal acts related to controlled substances." *Id.* at 6. Consequently, the government urges, it is entitled to the requested recorded jail calls. The defendants oppose the government's motion on two grounds, asserting (1) that the government has failed to show either an ongoing investigation or the relevance of the requested recordings to any such investigation, and (2) that the administrative subpoenas violate the defendants' Fourth Amendment rights.[3] *See* Panfilo's Opp'n at 3; Def. Agustin Flores Apodaca's Opp'n Gov't's Mot. Release Recorded Jail

---
[3] The defendants have raised no challenge based on the Due Process Clause of the Fifth Amendment.

Calls ("Agustin's Opp'n") at 3–4, ECF No. 26.  After review of the legal standards for judicial enforcement of administrative subpoenas, the parties' contentions are addressed in turn.

1. *Legal Framework*

Pursuant to statutes such as 21 U.S.C. § 876, "[a]dministrative agencies wield broad power to gather information through the issuance of subpoenas." *Resolution Trust Corp. v. Thornton*, 41 F.3d 1539, 1544 (D.C. Cir. 1994).  In this way, an agency "is . . . analogous to the Grand Jury, which does not depend on a case or controversy for power to get evidence but can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." *United States v. Morton Salt Co.*, 338 U.S. 632, 642–43 (1950).

In a proceeding to enforce an administrative subpoena, "the court's role . . . is a strictly limited one." *FTC v. Texaco, Inc.*, 555 F.2d 862, 871–72 (D.C. Cir. 1977) (en banc).  "[S]o long as the investigation [is] for a lawfully authorized purpose, the documents sought [are] relevant to the inquiry, and the demand [is] reasonable, the [agency has] a right to judicial enforcement of the subpoena[]." *Id.* (citing *Okla. Press Publ'g Co. v. Walling*, 327 U.S. 186, 209 (1946)); *see United States v. Powell*, 379 U.S. 48, 57–58 (1964) ("[The agency] must show that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within the [agency's] possession, and that the administrative steps required by [statute] have been followed . . . ."); *Morton Salt Co.*, 338 U.S. at 652 ("[I]t is sufficient if the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant.").  Accordingly, a court must look to the authorizing statute in determining whether a given subpoena may be enforced. *See, e.g., Lazar*, No. 04-200017-DV, 2006 WL 3761803, at *9 (explaining court's inquiry

addresses both "statutory prerequisites to issuing and enforcing" and "judicially created standards for enforcing" subpoenas).

While the court's inquiry involves "neither minor nor ministerial matters," *Walling*, 327 U.S. at 217 n.57, "[i]f an agency's subpoena satisfies these requirements, [a court] must enforce it," *Thornton*, 41 F.3d at 1544. To the extent the Fourth Amendment is implicated by the use of an administrative subpoena, satisfaction of these requirements also satisfies that amendment. *See Walling*, 327 U.S. at 208 ("[T]he Fourth [Amendment], if applicable, at the most guards against abuse only by way of too much indefiniteness or breadth in the things required to be 'particularly described,' if also the inquiry is one the demanding agency is authorized by law to make and the materials specified are relevant."); *see also City of Los Angeles v. Patel*, 135 S. Ct. 2443, 2453 (2015) (holding "for an administrative search to be constitutional [under the Fourth Amendment], the subject of the search must be afforded an opportunity to obtain precompliance review before a neutral decisionmaker," which requirement would be satisfied by an administrative subpoena).

Ordinarily, "an investigation terminates once suit has been filed," and, thus, once "a targeted individual has been indicted, the government must cease its use of the grand jury in preparing its case for trial," and, by analogy, its use of administrative subpoenas. *Thornton*, 41 F.3d at 1546 (quoting *Phibbs*, 999 F.2d at 1077). In an exception to this general rule, however, "an agency's investigative powers survive the commencement of litigation where the agency seeks to uncover *additional wrongdoing*." *Id.* at 1547 (emphasis in original). Accordingly, where an investigation into further wrongdoing is ongoing, administrative subpoenas may be used even after an indictment has been returned.

11

### 2. *The Administrative Subpoenas Satisfy the Statutory and Judicial Requirements for Enforcement*

The defendants' first argument attacks the subpoenas on the ground that they do not satisfy the statutory and judicial requirements for enforcement. Specifically, the defendants contend that the government has failed to demonstrate the existence of an investigation or the relevance of the requested materials. *See* Panfilo's Opp'n at 3; Agustin's Opp'n at 3. In support of this contention, the defendants assert as a threshold matter that"[t]he Government states nothing in its motion that its investigation in this case is (1) ongoing, or (2) that the recordings they seek are somehow relevant or connected to that investigation." Panfilo's Opp'n at 3. As noted above, in its motion, the government avers that an investigation into the defendants' illegal activities involving controlled substances is ongoing, and that the sought-after calls are believed to be relevant to the investigation. *See* Gov't's Mot. at 6. Consequently, on this score, the defendants are plainly incorrect.

The defendants also express the view that "[t]he facts presented in this case certainly suggest that the Government does not have an 'investigation' into criminal conduct on the part of the defendants," and that, instead, "the Government is searching for evidence for use in the existing case," which, the defendants having already been indicted, it may not do. Agustin's Opp'n at 4. Specifically, the defendants emphasize that "the Government resorted to an administrative subpoena after its first two efforts to obtain the same information were unsuccessful," *id.,* making apparent that use of the administrative subpoenas was "a tactic aimed at evading judicial review and circumventing the obligation" under Rule 17(c) of demonstrating to the Court that a subpoena as to the recordings should issue, Panfilo's Opp'n at 4.

12

The defendants have a point: Rule 17 subpoenas *duces tecum* differ significantly in form and function from administrative subpoenas. Rule 17 permits the parties to a criminal case to subpoena witnesses and documents, *see generally* Fed. R. Crim. P. 17, but pretrial production may only be required at the direction of the Court, *see* Fed. R. Crim. P. 17(c). The purpose of such pretrial production is "to expedite the trial by providing a time and place before trial for the inspection of subpoenaed materials." *United States v. Nixon*, 418 U.S. 683, 698–99 (1974). To warrant pretrial production, the requesting party "must clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity." *Id.* at 700. While Rule 17(c) is not to be used for "general 'fishing expedition[s],'" the Supreme Court has found its requirements met where "there was a sufficient likelihood that [subpoenaed tape recordings] contain[] conversations relevant to the offenses charged in [an] indictment" that would be admissible as evidence at trial. *Id.* at 700. The rule is routinely invoked by parties seeking to obtain recorded jail calls, which may be many hours in length, prior to trial. *See, e.g., Binh Tang Vo*, 78 F. Supp. 3d at 174 (Government seeking recorded jail calls of detained defendants); *United States v. Tucker*, 249 F.R.D. 58, 59–60 (S.D.N.Y. 2008) (Rule 17(c) invoked by defendant seeking over forty-five hours of recorded jail calls of cooperating witnesses).

Administrative subpoenas, by contrast, and as noted above, are used primarily to discover information relevant to a government agency's investigation into wrongdoing, and no court order is required for production of requested materials outside of a courtroom. *See, e.g.,* 21 U.S.C. § 876. Consequently, the government's actions in first seeking recorded calls pursuant to a Rule 17 subpoena *duces tecum*, then requesting that DOC voluntarily provide the government with the recordings, in the absence of any subpoena, and finally, when both those approaches failed,

13

invoking the power of an administrative subpoena, creates the appearance of an inconsistency, necessitating a thorough airing of the legal basis for the government's selected approach.[4]

No case in this circuit addresses the propriety of the use of administrative subpoenas to obtain jail calls in an action involving indicted defendants facing trial after extradition. DOC, in its letter to the Court, cited *United States v. Binh Tang Vo*, 78 F. Supp. 3d 171 (D.D.C. 2015), which held that the government may not under the guise of a Rule 17 subpoena *duces tecum* invite pretrial production of targeted materials absent the judicial approval required under Rule 17(c). *See* Notice to Parties at 1–2. That case, however, presented no occasion to consider the use of administrative subpoenas to obtain recorded jail calls, nor does its holding, which addresses the government's conduct in inviting pretrial production of records pursuant to Rule 17(c) in the absence of a court order, prohibit DOC from voluntarily providing that information. Nevertheless, DOC's caution with respect to the administrative subpoenas issued in this matter is understandable given both the government's shift in tactics in its effort to obtain the targeted jail calls and the dearth of authority addressing the precise issue presented here.

While this Circuit has provided ample guidance on judicial enforcement of administrative subpoenas generally, it has not had occasion to define the contours of an agency's authority to use administrative subpoenas post-indictment. In its motion, the government suggests such authority is virtually unbounded, relying upon an out-of-circuit decision for the proposition that § 876, "unlike the grand jury system, . . . may . . . be used to discover evidence related to the charges in the original indictment." Gov't's Mot. at 5 (quoting *Phibbs*, 999 F.2d at 1077).

---

[4] Perhaps the government believes it could not make the showing required under Rule 17(c) and *Nixon* for pretrial production of the requested jail calls. Nevertheless, the instant dispute provides no occasion for consideration of whether, in fact, Rule 17(c) was an appropriate means of obtaining the calls. Whatever the government's subjective assessment of its ability to meet Rule 17(c)'s requirements, the focus of the present inquiry is the appropriateness of the government's use of the administrative subpoenas at issue.

14

While only the Sixth Circuit has explicitly concluded that § 876 contemplates no limit on post-indictment collection of evidence in aid of ongoing litigation, decisions of a number of other courts, cited by the government, lend further support for its position. *See, e.g., United States v. Harrington*, 761 F.2d 1482, 1485 (11th Cir. 1985) (holding "the D.E.A. may issue subpoenas under Section 876 in an ongoing investigation so long as they are not to run against the targeted individual" even after an indictment has been returned); *United States v. Hossbach*, 518 F. Supp. 759, 765–67 (E.D. Pa. 1980) (rejecting defendants' argument that "subpoena power in criminal investigations rests exclusively in the hands of grand juries and courts" in light of § 876's broad grant of subpoena power "in any investigation"). Yet, the government's proposed approach is in tension with this Circuit's precedent. While the D.C. Circuit has approved the use of administrative subpoenas post-indictment where the subpoenas target information regarding "*additional wrongdoing*," *see Thornton*, 41 F.3d at 1547 (emphasis in original), it has also emphasized the "traditional scope of investigative authority," as reflected in the law governing grand jury investigations, to suggest that administrative subpoenas may not be used "in aid of ongoing litigation," *id.* Consequently, whether this Circuit would deem permissible the use of administrative subpoenas to discover evidence related only to charges in a pending indictment, notwithstanding § 876's broad language permitting their use in "any investigation," remains an open question.

This uncertainty in the law notwithstanding, the government has made the minimum showing required for enforcement of the subpoenas. In its motion, the government avers that an investigation into past, present, and future criminal conduct by the defendants is ongoing and explains its determination of the relevance of the records sought. As noted above, the defendants question whether any such investigation exists. Yet, "the boundary [of an investigation] may be

15

defined quite generally" for the purposes of determining whether an administrative subpoena must be enforced. *FTC v. Invention Submission Corp.*, 965 F.2d 1086, 1090 (D.C. Cir. 1992). The government has in broad strokes indicated that although the defendants in this matter have already been indicted for alleged violations of the Controlled Substances Act, they continue to be investigated for past, present, and future violations of that Act. This description suffices to meet the threshold requirement for enforcement of the administrative subpoenas at issue here.

Nevertheless, in view of certain circumstances presented by the instant case, the Court is left to ponder what possible use the government contemplates for the jail calls other than as evidence at trial on the original indictment in this matter. Since the defendants have been extradited, "the so-called doctrine of specialty, which provides that 'once extradited, a person can be prosecuted only for those charges on which he was extradited,'" applies to this criminal case. *United States v. Lopesierra-Gutierrez*, 708 F.3d 193, 206 (D.C. Cir. 2013) (quoting *United States v. Sensi*, 879 F.2d 888, 892 (D.C. Cir. 1989)). No party has raised the issue. Assuming, however, the government is aware of the doctrine of specialty, its applicability here would suggest that any ongoing investigation does not have as its aim the addition of charges to the original indictments in this case. Thus, it may be that the government hopes the calls will yield evidence for use at trial in the instant matter, such as evidence of "a crime, wrong, or other act" admissible under Federal Rule of Evidence 404(b), which use may not be permissible in light of *Thornton*. Notwithstanding this possibility, in light of the government's representations that evidence of additional wrongdoing is sought, as well as the Court's limited role in reviewing administrative subpoenas, the question whether, in this Circuit, an administrative subpoena may be used post-indictment to obtain evidence to be used at a trial on the charges in the pending indictment must be left for another day.

With respect to whether the information sought is relevant, the government has also made a sufficient showing. "[A] district court must enforce a federal agency's investigative subpoena if the information sought is 'reasonably relevant,' or, put differently, 'not plainly incompetent or irrelevant to any lawful purpose of the agency,' and not 'unduly burdensome' to produce." *Invention Submission Corp.*, 965 F.2d at 1089 (internal quotation marks and citations omitted)). In a proceeding to enforce an administrative subpoena, "the agency's own appraisal of relevancy must be accepted so long as it is not obviously wrong." *Id.* (internal quotation marks omitted). Indeed, "in light of the broad deference . . . afford[ed] the investigating agency, it is essentially the respondent's burden to show that the information is irrelevant." *Id.* at 1090. The government has explained that jail calls often contain admissions of past, present, or future criminal violations. This explanation being far from "obviously wrong," *id.* at 1089, it must be accepted here.[5]

### 3. *The Administrative Subpoenas Do Not Violate the Fourth Amendment*

The defendants further suggest that the government's motion should be denied on the ground that enforcement of the administrative subpoenas would violate the defendants' Fourth Amendment rights. *See* Panfilo's Opp'n at 3. This argument is also unavailing. As explained *supra* Part II.A.1, the defendants possess no Fourth Amendment rights in the recorded jail calls. Moreover, as noted above, even assuming the Fourth Amendment were implicated here, the government's satisfaction of the requirements for use of an administrative subpoena also satisfies the Fourth Amendment. *See Walling*, 327 U.S. at 208; *see also Patel*, 135 S. Ct. at 2453.

---

[5] The defendants' request that "this Court . . . conduct an inquiry" to create "a record to determine if in fact there is an 'investigation' pending and whether the requested jail calls are relevant to that inquiry" is denied in view of the government's representations. Agustin's Opp'n at 4–5.

## III. CONCLUSION

For the foregoing reasons, the government is entitled to enforcement of the administrative subpoenas, and, thus, to the jail calls targeted therein. In granting the instant motion, the Court does not pass on the separate question of whether any of the information obtained by way of these administrative subpoenas may properly be used at trial in this matter.

Accordingly, it is hereby

**ORDERED** that the government's Motion to Release Defendants' Jail Calls is GRANTED; and it is further

**ORDERED** that the government shall promptly contact the Court's courtroom deputy to arrange for collection of the two CDs containing the recorded jail calls.

**SO ORDERED.**

Date: April 21, 2017

_____
BERYL A. HOWELL
Chief Judge