**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
| | ) |
| **v.** | ) **CRIMINAL NO.: 14-CR-057 (BAH)** |
| | ) |
| **AGUSTIN FLORES APODACA,** | ) |
| **A/K/A EL NINO,** | ) |
| **A/K/A EL BARBON,** | ) |
| **A/K/A EL INGENIERO** | ) |
| | ) |
| **Defendant** | ) |
| | ) |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO PRECLUDE**
**INTRODUCTION OF POST ARREST TITLE III INTERCEPTS**

**I.    Introduction**

The Government respectfully submits this opposition to Defendant Agustin Flores Apodaca's (hereinafter "Defendant") Motion to Preclude the Introduction of Post Arrest Title III Intercepts ("Prec. Mot."). *See* Docket No. 51.  The Defendant seeks to preclude the introduction of electronic communications intercepted after his arrest on the basis that his arrest effectuated his withdrawal from the conspiracy.  The Defendant argues that these communications are not admissible as co-conspirator statements pursuant to Federal Rule of Evidence 801(d)(2)(E). Prec. Mot. at 3.  For the reasons set forth below, the Government respectfully submits that the Defendant failed to identify a basis in law or fact that establishes his affirmative withdrawal from the conspiracy.  Therefore, the Court should deny his motion and allow the Government to introduce the Title III intercepts as co-conspirator statements.

**II.    Background**

### A.  The Investigation

On May 2, 2012, a Grand Jury sitting in the United States District Court for the District of Columbia returned a then-sealed original two-count indictment against the Defendant for violations of Title 21, United States Code, Sections 959, 960, 963; Title 18, United States Code, Section 2, 924(c)(1)(A)(i), 924(c)(1)(A)(ii), 924(c)(1)(B)(ii); and aiding and abetting in violation of Title 18, United States Code, Section 2.

On March 13, 2014, a Grand Jury sitting in the United States District Court for the District of Columbia returned a then-sealed original two-count indictment against co-defendant Panfilo Flores Apodaca (hereinafter "Co-Defendant Panfilo") in Criminal Case No. 1:14-cr-057-BAH for violations of Title 21, United States Code, Sections 959, 960, 963; Title 18, United States Code, Section 2, 924(c)(1)(A)(i), 924(c)(1)(A)(ii), 924(c)(1)(B)(ii); and aiding and abetting in violation of Title 18, United States Code, Section 2.

The Government moved to consolidate the two matters.  On January 6, 2017, the Court granted consolidation of the indictments under Criminal Case No. 1:14-cr-057-BAH.

The charges in the indictments stem from a long term investigation that began in July 2010, when a Confidential Informant (CI) provided information regarding a local drug distributor to the FBI Office in Washington State.  Through this investigation, the FBI was able to identify the local distribution cell of a larger Mexican drug trafficking organization with strong ties to the Beltran Leyva Cartel.

The investigation revealed that Fausto Isidro Meza Flores, also known as "Chapo Isidro" (hereinafter "Chapo Isidro") is the leader of this drug trafficking organization (hereinafter "DTO") based in Guasave, Sinaloa, Mexico.  The Defendant and Co-Defendant Panfilo are both uncles to Chapo Isidro.  Salome Flores Apodaca, also known as "Pelon" and "Fino", is Chapo Isidro's other uncle, and the Defendant and Co-Defendant Panfilo's brother.  Chapo Isidro and

Salome Flores Apodaca have been indicted in a two count indictment under Criminal Case No. 1:12-cr-00116-BAH.

The investigation revealed that the Defendant and Co-Defendant Panfilo, as well as other co-conspirators, are responsible for the distribution of cocaine, methamphetamine, marijuana, and heroin from Mexico into the United States, specifically Arizona and the Pacific Northwest. The Defendant had a significant role within the DTO synthesizing large volumes of methamphetamine from pre-cursor chemicals. These significant quantities of methamphetamine were sent to the United States for sale utilizing the transportation network of the DTO. The Defendant carried firearms on his person and employed armed gunmen for protection. Co-Defendant Panfilo grew and harvested marijuana, and also coordinated logistics for the shipments of narcotics into the United States for the DTO. Co-Defendant Panfilo carried firearms on his person and employed armed gunmen for his protection. The Defendants were also directly involved in acts of violence including shootouts against rival cartel members and kidnapping individuals who were unable to pay drug debts. The Government attributes the DTO and the Defendants with three seizures of cocaine, methamphetamine and marijuana in the United States and Mexico. Further, the Government is in possession of recorded phone calls of the Defendant in discussions of narcotics as well as purchasing automatic weapons. Further, Title III intercepts directly show Co-Defendant Panfilo's extensive involvement in drug trafficking and procurement of automatic weapons.

### B.  The Electronic Interceptions

On February 19, 2013, the Government made an initial application for the interception of electronic communications pursuant to 18 U.S.C. § 2518 before the United States District Court for the Western District of Texas. The Government requested an order authorizing the

interception of electronic communications to and from Target Device #1.[1]  This initial
application for an order authorizing the interception of electronic communications over Target
Device 1 was granted by the Honorable Philip R. Martinez, United States District Judge for the
Western District of Texas.

Throughout the course of the investigation, the Government received authorization from
DOJ officials to file twenty-seven (27) applications to the court for Electronic Interceptions,
from February 2013 to December 2014, and during this time period, the Government intercepted
thousands of pertinent electronic communications (Blackberry Messenger text messages)
between co-conspirators of the Defendant and Co-Defendant Panfilo's DTO, over fifty-nine (59)
different devices.  A portion of the intercepts included the electronic communications of Co-
Defendant Panfilo, who initially used Target Device 1, and thereafter switched to three
additional target devices.  The Government intercepted approximately 12,500 pertinent
electronic communications between Co-Defendant Panfilo and other DTO co-conspirators.  The
Defendant was not intercepted during the pendency of the Electronic Interceptions.

## III.   <u>Argument</u>

The Defendant argues his July, 2012 arrest triggered a "presumption that [the Defendant]
had withdrawn from the conspiracy."  Prec. Mot. at 1.  Based on the defense of withdrawal, the
Defendant argues that all statements made by co-conspirators after his arrest, including those
captured in the Government's electronic interceptions, cannot be introduced against him.  *Id.*  As
set forth below, the Defendant fails to meet the clear and unambiguous criteria set by this Circuit
to establish his affirmative withdrawal from the conspiracy.  Therefore, because the Defendant

---

[1]  The application for Target Device 1 was for a BlackBerry device, assigned Personal Identification Number
29F48218, telephone number 526873664372, and international mobile equipment identity number
352773058915857.

did not affirmatively withdraw from the conspiracy, the Court should reject his request to preclude the admission of the Government's Title III electronic evidence against the Defendant as co-conspirator statements.

## A. Legal Standard

A conspiracy is an " . . . ongoing offense that lasts, absent one's affirmative withdrawal from the enterprise, as long as any coconspirator continues to further common ends . . ." *United States v. Childress*, 58 F.3d 693, 733 (D.C. Cir. 1995).  If a conspiracy's ends have not been fully accomplished, the relationship of the conspirators to it remains the same as it was at the moment the conspiracy was brought to life.  *Hyde v. United States*, 225 U.S. 347, 368 (1912).  The successive overt acts are but steps toward its accomplishment, not necessarily its accomplishment.  *Id*.

In this Circuit, in order to withdraw from a conspiracy, an individual must "come clean to the authorities" or communicate abandonment "in a manner reasonably calculated to reach co-conspirators." *United States v. Bostick*, 791 F.3d 127, 143 (D.C. Cir. 2015) (*quoting United States v. Thomas*, 114 F.3d 228, 267 (D.C. Cir. 1997)) (internal quotation marks omitted).   Co-conspirators remain members of conspiracies until they "mak[e] a clean breast to the authorities or communicat[e] the abandonment in a manner reasonably calculated to reach co-conspirators." *United States v. Walls*, 70 F.3d 1323, 1327 (D.C. Cir. 1995) (citations omitted).  "Defendants have the burden of proving they affirmatively withdrew from the conspiracy[.]" *United States v. Dale*, 991 F.2d 819, 854 (D.C. Cir. 1993); *Bostick*, 791 F.3d 127, 143, *citing Smith v. United States*, 586 U.S. 106, 113 (2013) (The defendant has the burden of establishing his or her withdrawal from the conspiracy.); *see also Hyde v. United States*, 225 U.S. 347, 369-70 (1912) (holding a defendant is still a member of the conspiracy "until he does some act to disavow or defeat the purpose . . .");

*United States v. Goldberg*, 401 F.2d 644, 648 (2d Cir.). ("A mere cessation of activity in furtherance of the conspiracy is insufficient); *United States v. Gillen*, 599 F.2d 541, 548 (3d Cir.) (holding that the burden is on the defendant to prove affirmative acts inconsistent with the object of the conspiracy and communicated in a manner reasonably calculated to reach co-conspirators.); *United States v. Walker*, 796 F.2d 43, 48 (4th Cir. 1986) (holding "[o]nce a conspiracy is established, it is presumed to continue unless or until the defendant shows that it was terminated or he withdrew from it.").

A defendant's *arrest* does not constitute a withdrawal from the conspiracy and does not create a presumption of withdrawal.  *United States v. Wilkerson*, 656 F.Supp.2d 22, 44 (D.D.C. 2009) (emphasis added), *citing United States v. Harris*, 542 F.2d 1283, 1301 (7th Cir. 1976) ("the arrest or incarceration of a conspirator may constitute a withdrawal for a conspirator, but does not as a matter of law."); *United Sates v. Zarnes*, 33 F.3d 1454, 1468 (7th Cir. 1994) (holding recorded conversations concerning drug dealings were admissible as statements of coconspirators against defendant even though statements were made after defendant was in jail, absent other evidence to show that defendant had withdrawn from conspiracy.); *United States v. Harris,* 542 F.2d 1283, 1301 (7th Cir.1976) ("The arrest or incarceration of a conspirator may constitute a withdrawal for a conspirator, but it does not as a matter of law."); *United States v. Gonzalez*, 940 F.2d 1413, 1427 (11th Cir.1991) (holding that withdrawal is an affirmative defense and neither arrest nor incarceration automatically triggers withdrawal from a  conspiracy.); *United States v. West*, 877 F.2d 281, 289 n.4 (4th Cir. 1989) (holding a defendant's membership in a conspiracy is presumed to continue until he withdraws from the conspiracy by affirmative action. Withdrawal must be shown by evidence that the defendant acted to defeat or disavow the purposes of the conspiracy.). A passive nonparticipation in the continuing conspiracy scheme is not enough to sever the meeting

of the minds requirement that constituted the conspiracy.  *Smith* 568 U.S. at 113.  A defendant's membership in the conspiracy, and his responsibility for its acts, endures even if he is entirely inactive after joining the conspiracy.  *Id*. at 114.

B. **Analysis**

In this case, the Defendant has failed to present *any* evidence of his affirmative withdrawal from the conspiracy.   Instead, without providing a legal basis recognized by this Circuit, the Defendant argues that his arrest triggered a presumption that he withdrew from the conspiracy and, as such, the intercepted electronic communications of his co-conspirators are not admissible against him at trial.  For the reasons set forth below, the Defendant has not met his burden and the Court should admit the intercepted electronic communications of co-conspirators at trial.

The Defendant's argument completely overlooks the clear steps that a defendant must undertake to successfully withdraw from a criminal conspiracy in this Circuit.  The Defendant did not "come clean to authorities" as he was arrested pursuant to a warrant for the indicted offense.  *See Bostick*, 791 F.3d at 146.  In fact, the Defendant was given an opportune chance to "come clean to authorities" when agents from the FBI and DEA visited the Defendant at the Altiplana Federal Rehabilitation Center in Toluca, Mexico on September 26, 2012, two months after his arrest.[2]  The Defendant was provided with an International Advice of Rights Form, waived his Fifth Amendment and Sixth Amendment rights, and then made a self-serving exculpatory statement to law enforcement, instead of exposing the conspiracy to the FBI.  Specifically, the Defendant indicated that he was only a business man, involved in agriculture and denied any involvement in drug trafficking.

---

[2]      For an in-depth analysis of the September 26, 2012 interview please see the Government's Opposition to Defendant Agustin's Motion to Suppress Statements.

Further, the Defendant did not communicate abandonment "in a manner reasonably calculated to reach co-conspirators." *Id.* Even assuming *arguendo* that the Defendant's arrest somehow signalled to other co-conspirators that he has abandoned the conspiracy, the Defendant has not met his burden of taking an affirmative act to withdraw from the conspiracy. *Dale*, 991 F.2d at 854. The Defendant cannot let the passive act of his arrest communicate abandonment of the conspiracy. *Smith* 568 U.S. at 113. Simply, the Defendant was arrested for being an integral member of a conspiracy that continued even after his arrest and incarceration. *See Harris,* 542 F.2d at 1301.

The Defendant encourages the Court to look to *United States v. Escobar*, 842 F.Supp. 611 (EDNY 1992), a twenty-three-year-old trial court memorandum opinion and order that determined that a defendant's arrest created a rebuttable presumption that he had withdrawn from the conspiracy for which he was charged. Prec. Mot. at 1, *citing Escobar*, 842 F .Supp. at 1528 (holding "[w]hile the arrest and incarceration of a conspirator does not always constitute withdrawal from the conspiracy, there is a rebuttable presumption that incarceration constitutes withdrawal by that conspirator."). However, in advancing that argument, the Defendant completely overlooks the Second Circuit's subsequent *explicit* rejection of *Escobar's* findings, specifically recognizing in its holding that a presumption of withdrawal due to arrest is " . . . not the law of the Second Circuit." *United States v. Massino*, 546 F.3d 123, 137 (2d. Cir. 2008). The Second Circuit noted that "a conspirator who has been arrested remains responsible for acts committed in furtherance of the conspiracy by co-conspirators who are still at large." *Id.*, *citing United States v. Cruz,* 797 F.2d 90, 98 (2d Cir. 1986) (holding that while an arrest terminated the defendant's active participation in the conspiracy, it did not terminate the conspiracy itself of the defendant's participation therein as defendant offered no evidence of his

withdrawal.); *see also United States v. Joyner,* 201 F.3d 61, 72 (2d Cir. 2000) (holding that although the defendant "was incarcerated when those offenses occurred, he remained a coconspirator-he soon emerged from jail to resume participation in the ring's drug-trafficking-and was responsible for crimes that were foreseeable consequences of the conspiracy.").  The *Massino* court held "[w]hile arrest or incarceration may constitute a withdrawal from a conspiracy, it does not follow that in every instance it must, and whether a coconspirator's imprisonment constitutes a withdrawal must be decided by the jury in light of the length and location of the internment, the nature of the conspiracy, and any other available evidence." *Id. citing United States v. Flaharty,* 295 F.3d 182, 192-93 (2d Cir. 2002).  Here, in light of the Defendant's failure to come clean to the FBI and DEA, the circumstances surrounding his imprisonment demonstrate his unwillingness to withdraw.

This facts in this matter are analogous to the facts in *United States v. Zarnes.*  33 F.3d 1454 (7th Cir. 1994).  The *Zarnes* court found that the an incarcerated defendant did not take the necessary steps to withdraw from the conspiracy as she did not announce to her co-conspirators that she was no longer a member of the conspiracy.  33 F.3d at 1468.  As a result, the court held that a taped co-conspirator statement made after the defendant's arrest was admissible.  *Id.*; *see also Wilkerson,* 656 F.Supp.2d 22 at 44.  As in *Zarnes*, the Government plans on introducing at trial, co-conspirator statements of intercepted communications made during the Defendant's incarceration.  Similarly, the Defendant fails to establish that he announced to his co-conspirators that he was no longer a member of the conspiracy nor does he establish that he made efforts to come clean to law enforcement.  *See Gonzalez*, 940 F.2d at 1427 (holding that neither arrest nor incarceration automatically trigger withdrawal from a conspiracy absent efforts to disavow or

defeat the conspiratorial objectives and either communication of those acts in a manner reasonably calculated to reach co-conspirators or disclosure of the illegal scheme to law enforcement).

As indicated above a conspiracy existed between the Defendant, Co-Defendant Panfilo, as well as other co-conspirators, with the conspiratorial goal of the distribution of cocaine, methamphetamine, marijuana, and heroin from Mexico into the United States.  This conspiracy continued after the Defendant's arrest, as evidenced by the intercepted electronic communications the Government intends to introduce as direct evidence against Co-Defendant Panfilo.  The Defendant has the burden to prove his withdrawal from the conspiracy, however, he has failed to satisfy this burden.  The Defendant has not provided any evidence of steps taken to withdraw from the conspiracy, which is presumed to continue unless he is able to show that the conspiracy was terminated or he withdrew from it.  *See Walker*, 796 F.2d at 48.  Thus, the Defendant's arrest did not affirmatively nor passively withdraw him from the conspiracy, of which he remained a member.  As such the co-conspirator statements of intercepted electronic communications are admissible against him and his claims are without merit.

### III.   Conclusion

For the foregoing reasons, the Government respectfully requests that this Court deny the

Defendant's Motion to Preclude Introduction of Post Arrest Title III Intercepts

Respectfully submitted this 12th day of July, 2017.

ARTHUR WYATT, Chief
Narcotic and Dangerous Drug Section

By:   _/s/_____
Jason Ruiz
Michael Waits
Trial Attorneys
Narcotic and Dangerous Drug Section
U.S. Department of Justice
145 N Street NE
Second Floor, East Wing
Washington, DC 20530
Office: (202) 514-0917
Jason.Ruiz@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was sent via electronic mail, to counsel of record for the Defendant, this 12th day of June, 2017.

Respectfully submitted,

ARTHUR WYATT, Chief
Narcotic and Dangerous Drug Section

By:     /s/
Jason Ruiz
Michael Waits
Trial Attorneys
Narcotic and Dangerous Drug Section
U.S. Department of Justice
145 N Street NE
Second Floor, East Wing
Washington, DC 20530
Office: (202) 514-0420
Fax: (202) 514-6112
Jason.Ruiz@usdoj.gov